IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| MATTHEW JONES, | ) |
| | ) |
|    Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION 19-0100-WS-N |
| | ) |
| GLOBE METALLURGICAL, INC., | ) |
| | ) |
|    Defendant. | ) |

**ORDER**

This matter is before the Court on the defendant's motion for summary judgment. (Doc. 28). The parties have filed briefs and evidentiary materials in support of their respective positions, (Docs. 28, 30, 31), and the motion is ripe for resolution. After careful consideration, the Court concludes the motion is due to be granted.

**BACKGROUND**

According to the complaint, the plaintiff was employed by the defendant. In May 2018, the defendant created a policy prohibiting employees from wearing dreadlocks. When the defendant informed the plaintiff of the policy and demanded that he agree to cut his hair or be terminated, the plaintiff refused and was terminated. The complaint alleges that the policy is racially discriminatory and that its application to the plaintiff constituted unlawful disparate treatment based on race. Count One asserts a claim of disparate treatment in violation of Title VII. (Doc. 1 at 1-2, 4-5).

The complaint further alleges that the plaintiff witnessed a forklift driver's fatal accident in April 2018 and that the defendant created the dreadlocks policy in order to have a reason to terminate the plaintiff because he had requested to speak

with OSHA about the incident and/or in order to prevent him from speaking with OSHA investigators. Count Two asserts a claim for retaliatory discharge based on the plaintiff's request to speak with OSHA. (Doc. 1 at 2, 5-7). Although Count Two does not identify the statutory basis for this claim, the complaint elsewhere confirms that both claims are brought only under Title VII. (*Id*. at 1, 3).

## DISCUSSION

Summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991). The moving party may meet its burden in either of two ways: (1) by "negating an element of the non-moving party's claim"; or (2) by "point[ing] to materials on file that demonstrate that the party bearing the burden of proof at trial will not be able to meet that burden." *Id*. "Even after *Celotex* it is never enough simply to state that the non-moving party cannot meet its burden at trial." *Id*.; *accord Mullins v. Crowell*, 228 F.3d 1305, 1313 (11th Cir. 2000); *Sammons v. Taylor*, 967 F.2d 1533, 1538 (11th Cir. 1992).

"If the party moving for summary judgment fails to discharge the initial burden, then the motion must be denied and the court need not consider what, if any, showing the non-movant has made." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1116 (11th Cir. 1993); *accord Mullins*, 228 F.3d at 1313; *Clark*, 929 F.2d at 608.

"If, however, the movant carries the initial summary judgment burden ..., the responsibility then devolves upon the non-movant to show the existence of a genuine issue of material fact." *Fitzpatrick*, 2 F.3d at 1116. "If the nonmoving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof,' the moving party is entitled to

2

summary judgment." *Clark*, 929 F.2d at 608 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)) (footnote omitted); *see also* Fed. R. Civ. P. 56(e)(2) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may … consider the fact undisputed for purposes of the motion ….").

In deciding a motion for summary judgment, "[t]he evidence, and all reasonable inferences, must be viewed in the light most favorable to the nonmovant …." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003). "Therefore, the [non-movant's] version of the facts (to the extent supported by the record) controls, though that version can be supplemented by additional material cited by the [movants] and not in tension with the [non-movant's] version." *Rachel v. City of Mobile*, 112 F. Supp. 3d 1263, 1274 (S.D. Ala. 2015), *aff'd*, 633 Fed. Appx. 784 (11th Cir. 2016).

"There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment." *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995); *accord Gennusa v. Canova*, 748 F.3d 1103, 1116 (11th Cir. 2014). The Court accordingly limits its review to those arguments the parties have expressly advanced.

**I. Discriminatory Discharge.**

"It shall be an unlawful employment practice for an employer … to discharge any individual … because of such individual's race …." 42 U.S.C. § 2000e-2(a)(1). The defendant argues that discharging an employee because he wears dreadlocks is not a discharge "because of [the employee's] race." (Doc. 28 at 6-8). The defendant is correct under governing law.

"[A]s a general matter, Title VII protects persons in covered categories with respect to their immutable characteristics, but not their cultural practices." *Equal Employment Opportunity Commission v. Catastrophe Management Solutions*, 852

F.3d 1018, 1030 (11th Cir. 2016).  Thus, "discrimination on the basis of black hair texture (an immutable characteristic) is prohibited by Title VII, while adverse action on the basis of black hairstyle (a mutable choice) is not."  *Id*.  Indeed, "[a]s far as we can tell, every court to have considered the issue has rejected the argument that Title VII protects hairstyles culturally associated with race."  *Id*. at 1032 (listing cases).

The defendant cited and discussed *Catastrophe Management Solutions*, but the plaintiff ignores it.  His *ipse dixit* that his dreadlocks "are immutable characteristics" of his race, (Doc. 30 at 4), which is unsupported by citation to any authority, cannot stand in the face of this Eleventh Circuit precedent.

The plaintiff correctly notes that hair texture is an immutable characteristic, and he attempts to marry his hairstyle with his hair texture to salvage his claim.  (Doc. 30 at 3, 4; Doc. 1 at 5).  While it may be true that "[t]he style of Braids worn by Jones is particularly associated with the Black race due to the texture of hair and style of braids," (*id*. at 4), "[t]hat dreadlocks are a 'natural outgrowth' of the texture of black hair does not make them an immutable characteristic."  *Catastrophe Management Solutions*, 852 F.3d at 1030.

The plaintiff observes that dreadlocks are "unique" to African-Americans, such that a no-dreadlocks policy "would not affect any other race of workers the same."  (Doc. 30 at 4).  This is the language of disparate impact, not disparate treatment.  *Catastrophe Management Solutions*, 852 F.3d at 1024.  Since the plaintiff "is proceeding only on a disparate treatment theory," *id*.,[1] that the no-dreadlocks policy may have had a "disproportionate effect" on black employees and applicants is not relevant.  *Id*. at 1024-25.

---

[1] Count One is labeled as "Disparate Treatment under Title VII" and declares that the defendant's dreadlocks policy "subjects Jones to Disparate Treatment based on his race."  (Doc. 1 at 5).  The heading of the plaintiff's brief asserts that "Defendant's Acts Subjected the Plaintiff to Disparate Treatment."  (Doc. 30 at 2).

The grooming policy at issue in *Catastrophe Management Solutions* was "race-neutral," in that it required "[a]ll personnel" to avoid "excessive hairstyles." 852 F.3d at 1022. The plaintiff, who ignores *Catastrophe Management Solutions* entirely, does not argue that it applies only to policies that cover all employees. As noted, the Court declines to articulate or support arguments the parties have elected to omit. In any event, the reasoning of *Catastrophe Management Solutions* cannot be confined to grooming policies affecting all employees. The Eleventh Circuit ruled that Title VII protects covered employees only with respect to decisions based on their immutable characteristics and that dreadlocks are not an immutable characteristic. An employment decision based on dreadlocks therefore cannot constitute disparate treatment under Title VII even if the decision stems from a policy directed only at dreadlocks – or, indeed, even if the decision stems from no policy at all but from the whim of the decisionmaker.

It is of course always possible that an employer will purport to rely on a policy that does not discriminate based on race in order to disguise a decision that is based on race. *See, e.g., Catastrophe Management Solutions*, 852 F.3d at 1030 ("The EEOC's allegations … do not suggest that CMS used [its grooming] policy as a proxy for intentional discrimination."). The plaintiff, however, invokes no such theory; both in his complaint and in his brief, it is the policy itself that allegedly discriminates based on race.[2] Again, the Court confines its ruling to the arguments the parties actually raised.

The plaintiff's failure to assert that the defendant's express reliance on his dreadlocks was a cover for terminating him because he is black renders it unnecessary to resolve whether he could have reached a jury under such a theory. It is nevertheless worth noting that he would be unlikely to do so.

---

[2] The complaint challenges a "racially discriminatory policy," and Count One alleges that the defendant's "policy subjects Jones to Disparate Treatment based on his race." (Doc. 1 at 1, 5). The plaintiff's brief declares that "the rule against men wearing braids is racially discriminative." (Doc. 30 at 3).

The plaintiff says he has "direct evidence" that the defendant fired him because of his race, (Doc. 30 at 4), but he has identified none. "[D]irect evidence is composed of only the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of [race]." *Schoenfeld v. Babbitt*, 168 F.3d 1257, 1266 (11th Cir. 1999) (internal quotes omitted). The only remarks the plaintiff offers (and he does not offer them as direct evidence) are those of the defendant's human resources director during the meeting at which the plaintiff was terminated. The totality of that conversation, as related by the plaintiff, was as follows:

    Human Resources:  "What's up with your hair."
    Plaintiff:  "I got dreads."
    Human Resources:  "Well, I need you to cut it."
    Plaintiff:  "Man, I'm not cutting my hair."
    Human Resources:  "Well, your service is no longer needed."

(Doc. 30-1 at 68-69). According to this rendition, the human resources director identified the problem as the plaintiff's dreadlocks and fired him because he refused to cut them. As discussed above, a termination based on dreadlocks is not a termination based on race. Therefore, the intent of the human resource director's remarks could not necessarily be to discriminate based on race and therefore cannot constitute direct evidence.

Absent direct evidence, the plaintiff would have to rely on circumstantial evidence under the shifting burden paradigm of *McDonnell Douglas v. Green*, 411 U.S. 792 (1973). Assuming without deciding that the plaintiff could establish a prima facie case, the defendant's legitimate, nondiscriminatory reason would be the plaintiff's refusal to cut his dreadlocks. The burden would then shift back to the plaintiff to present sufficient evidence that the plaintiff's refusal to cut his dreadlocks was a pretext for terminating him because he is black.

The plaintiff's evidence of pretext, as set forth in his brief, would amount to the following: (1) the defendant had maintained no written policy against dreadlocks and in fact provided personal protective equipment for long hair; (2)

the plaintiff had worked for the defendant almost continuously for over seven years, wearing dreadlocks the entire time, yet had never once been warned about his hair; and (3) then "suddenly," mere days after a fellow employee was killed in a forklift accident as to which the plaintiff wanted to speak to OSHA, he was summoned into the office and given the choice to cut his dreadlocks or be fired. (Doc. 30 at 3-4).

The plaintiff's evidence might or might not support a determination that the defendant did not fire him because he refused to cut his dreadlocks, but it would not easily support a determination that the defendant fired him because he is black. The plaintiff does not assert that the defendant ever manifested a racial bias against him (or any other black employee), by comment or action, at any point over his seven-year employment, even though the defendant at all times knew the plaintiff is black.  Nor does the plaintiff identify any instance of less favorable treatment than similarly situated white employees with respect to hair, or speaking with investigators, or anything else.  That the defendant, against this background, would suddenly decide that the plaintiff's race was unacceptable seems most unlikely.  The plaintiff himself attributes the ultimatum to his interest in the OSHA investigation, (Doc. 30-1 at 78-79, 91) – a reason for termination that patently is not based on race.

In his conclusion, the plaintiff notes that the only evidence submitted by either side is his deposition, along with his responses to written discovery, and that in both he repeatedly declares that he was terminated because of his race.  The plaintiff asserts that his *ipse dixit* constitutes uncontroverted evidence that compels the denial of the defendant's motion.  (Doc. 30 at 5).  The plaintiff is incorrect for at least two reasons.  First, the plaintiff's only theory of recovery is that a policy banning dreadlocks discriminates on the basis of race; because that theory fails on legal grounds, the plaintiff's evidence is irrelevant.  Second, a plaintiff cannot create a fact issue simply by declaring that he is a victim of discrimination. *Flowers v. Troup County School District*, 803 F.3d 1327, 1337 (11th Cir. 2015).

**II. Retaliatory Discharge.**

The plaintiff asserts that the defendant violated Title VII by terminating him because he sought to speak with OSHA and/or to prevent him from doing so. The complaint explains that the plaintiff had asked the defendant to repair a flooring surface, which the defendant did not do prior to the fatal accident. (Doc. 1 at 5). The defendant argues that Title VII offers the plaintiff no protection against retaliation based on his attempted participation in an OSHA investigation. (Doc. 28 at 9-11). The defendant is again correct.

"It shall be an unlawful employment practice for an employer to discriminate against any of his employees … because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). "This subchapter" is limited to 42 U.S.C. §§ 2000e to 2000e-17, which has nothing to do with OSHA. "Because Title VII does not encompass violations of OSHA, …, Plaintiff's alleged reporting of [the defendant employer] to authorities for violating OSHA does not qualify as protected activity under Title VII …." *Washington v. M. Hanna Construction Inc.*, 299 Fed. Appx. 399, 401 (5th Cir. 2008). The plaintiff offers no defense of this claim.

## CONCLUSION

For the reasons set forth above, the defendant's motion for summary judgment is **granted**. Final judgment shall be entered by separate order.

DONE and ORDERED this 22nd day of April, 2021.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE